## COLE *v.* COLE.

4-7241                                    186 S. W. 2d 437

Opinion delivered March 26, 1945.

*Fred A. Isgrig, John S. Gatewood, Ed E. Ashbaugh* and *Miles & Amsler,* for appellant.

*Byron Bogard,* for appellee.

GRIFFIN SMITH, Chief Justice. Sam Cole, Negro, died June 26, 1942. Letters of administration were granted Connie Cole, who represented to the Probate Court that she was Sam's widow. July 31st, the Court found that there were no minor children, and directed

that statutory payments aggregating $450 be made to the widow. August 12, 1942, Josephine Cole petitioned that Connie's $2,000 bond be increased, alleging that when Sam died he had $2,200 in postal savings and $1,800 in cash. Concurrently, Josephine asked in a separate petition that Connie be removed as administratrix. According to Josephine's allegations, she and Sam were married in Pulaski County February 7, 1919, and had not been divorced.

Ora Mae Curtis intervened, claiming that she was Sam's daughter by Katie McCraw, to whom Sam is alleged to have been married. Certain realty in North Little Rock, said Ora Mae, was owned by Emma Cole— Sam's mother. At her death in 1936 this property descended to Sam. The prayer was that she be declared to be her father's only heir.

Appeals are from a judgment finding (a) that Connie was not legally married to Sam because Sam and Josephine were husband and wife and had not been divorced; (b) that Josephine occupied a widow's status and that the allowance formerly made to Connie should be revoked; (c) that Ora Mae Curtis was not a lawful heir of Sam Cole, and (d) that Connie and Sam were partners in respect of certain property.

The domestic activities of Sam and his consorts, and the facility with which they commuted from one illicit relationship to another, would make prize chapters in a textbook on polygamy.

It is probable that when Connie went through the formality of marrying Sam in 1937 she believed him to be a divorcee. He had spent considerable time in Saint Louis with another mate; and Josephine, who was putatively attached matrimonially—at one time to Jerry Logan and at another to John Carter—lived within a block of Sam and Connie in North Little Rock. Josephine introduced Jerry Logan to Connie and told her Jerry was the father of her little girl. Connie first met Josephine in the business establishment she (Connie) and Sam con-

ducted in North Little Rock. Josephine told her she "gave Sam a divorce."

There is a great deal of testimony relating to Connie's management of the business before and after Sam became ill with tuberculosis. Under her supervision their commercial activities were profitable. Aggregate postal savings amounted to $2,200, and there were other assets.

The Court did not find against a preponderance of the evidence when it held that, although Josephine was Sam's lawful wife at the time he died and as such was entitled to her legal share of his estate, Connie had invested and reinvested her own money in the business; hence the estate's apportionment was but a half.

It is argued that because Probate Court has no jurisdiction in partnership matters, the order finding that Connie and Sam were joint owners of the business and profits arising from it was *coram non judice*. While language of the judgment is that Connie and Sam were partners, the effect is a judicial determination that but half of such property claimed by Connie went to her individually, and that the remainder should be accounted for by the administratrix. When this construction is placed on the judgment the vice urged against it becomes unimportant.

Evidence clearly establishes the fact that Ora Mae Curtis was Sam's daughter. We are asked to construe § 4342 of Pope's Digest so that the intervener may inherit. The statute is: "The issue of all marriages deemed null in law, or dissolved by divorce, shall be deemed and considered as legitimate."

The difficulty is that Sam and Katie McCraw were not married. Their arrangement was one of convenience and propinquity. When Katie (then with Sam in Hot Springs) became pregnant she returned to her mother's home in Little Rock, where Ora Mae was born. Sam acknowledged he was her father, and subsequently endeavored to persuade Katie to again live with him, but there was seemingly no purpose that the formality of marriage

should be invoked. See *Evatt* v. *Miller,* 114 Ark. 84, 169 S. W. 817, L. R. A. 1916C, 759. That case is also authority for the Court's holding that Josephine was Sam's widow.

Affirmed.